[See Cases Nos. 16,258a and 16,258b.]

---

## Case No. 16,258a.

### UNITED STATES v. SEVENTY-EIGHT CASES OF BOOKS.

[2 Bond, 281.] [1]

District Court S. D. Ohio. April Term, 1869.

CUSTOMS LAWS—FORFEITURE FOR UNDERVALUATION—EVIDENCE—RULE OF VALUATION—PROVINCE OF JURY.

1. The first count in the information is based on section 66 of the act of 1799, and the second on section 1 of the act of March, 1863, but they both contain substantially the charge of fraud in entering books at the custom-house, at a fraudulent undervaluation. Both counts charge that the entry at a false valuation was with an intent to defraud the United States of the full legal tax or duty.

2. The evidence must satisfy the jury that the books were invoiced below their value, and also that this was done with the intent charged in the information.

3. The entire entry at Port Huron embraced 204 boxes, but of these, 78 only were sent to Cincinnati and seized there, and are all now proceeded against for forfeiture; but in considering the question of undervaluation, the jury may look to the entry of the 204 cases. Eight of the 78 cases having been released from seizure, there are but 64 cases to which the question of forfeiture applies.

4. The books were purchased in London and Edinburgh, were shipped to Montreal, and there the invoices were made out, and were verified before the vice-consul of the United States at that place, and the invoice prices should have been the value of the books at that

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

place, but in determining the value at Cincinnati, the cost of transportation from Montreal to that place is to be added.

5. The question in the case is one of fraud, which is partly a question of fact and partly of law. It is for the jury to find the facts proving the alleged fraud, and for the court to determine whether the facts proved import a fraud in law.

6. There can be no question, if the jury are satisfied that the claimant entered the books knowingly at a false valuation, it is a legal fraud, and subjects the books to forfeiture.

[This was an information of forfeiture against seventy-eight cases of books, under the customs laws, on the ground of a fraudulent undervaluation. Certain exceptions to the information were heretofore overruled. Case No. 16,258.]

Warner M. Bateman, Dist. Atty., and Henry Stanbery, for the United States.

Lewis H. Bond, for interveners.

LEAVITT, District Judge (charging the jury). You will have understood from what has taken place in your presence, since you took your places as jurors, the nature of this proceeding and the questions on which you are to pass. It is a suit prosecuted by the United States for the forfeiture of a large quantity of books, alleged to have been fraudulently imported, in violation of law. In the information filed by the government, which presents the issues you are to decide, there are two counts or charges, on which a verdict of forfeiture is claimed by the counsel for the United States. The first is based on section 66 of an old statute, passed March 3, 1799; and the second charge is framed under section 1 of the act of March 3, 1863. As these sections are of great length and somewhat complicated in their provisions, I will not recite them at length to the jury. They are evidently intended to provide for and punish, by forfeiture or otherwise, every possible fraud in the importation of goods or merchandise from a foreign country, entered at a false valuation, with an intent to defraud the government of the legal tax or duty. Without attempting to dissect or analyze separately the charges stated in the two counts of the information, it may be stated that they both aver substantially, that seventy-eight cases of books were imported from Sarnia, a port in Canada, into Port Huron, a port in the United States, and fraudulently entered at the custom-house at the latter port, at a price greatly below their actual value, with the fraudulent intent of evading the just and legal duties to which they were subject; whereby, it is averred, the books are forfeited to the United States.

This brief statement exhibits the case which you are to decide by your verdict. The inquiry for your consideration is whether the fraud charged is proved to your satisfaction by the evidence adduced. The alleged fraud is denied by Thomas J. Shaw, who is before you claiming the books in his own right, or as agent for others, and denying, by his answer duly filed, all the allegations of fraud as set forth in the information.

It is claimed by the United States that the proof shows that there were 204 cases of books entered at the custom-house at Port Huron, at a false valuation, by the claimant Shaw, as to which the charge of fraud applies. But, of these 204 cases imported, only 78 were sent for sale at Cincinnati, and were all that were seized here. It is only, therefore, the 78 cases that are in controversy in this proceeding, but in the consideration of the question of undervaluation, it will be competent for the jury to consider the entire importation of the 204 cases. It may be proper here to remark, that of the 78 cases sent to Cincinnati, which are brought by the seizure within the jurisdiction of this court, eight cases have been released by order of the secretary of the treasury, upon the application of Bell & Dolby, booksellers of London, as to these the charge of fraud in their importation does not apply, and the counsel for the United States do not claim a forfeiture as to them. There are, therefore, 64 cases only now in controversy, and which are claimed as forfeited. But it is claimed by the United States, that there was fraud in the entire importation; and that, if the jury is not satisfied of the fraud as to all these books, the proof as to the 64 cases is clear.

It will be obvious to the jury that their principal inquiry will be, whether these books were imported and entered by Shaw at a false or undervaluation, with the design of evading the payment of the 25 per cent. ad valorem duty imposed by law. If the jury find that the evidence justifies the conclusion that the books were knowingly entered at an undervaluation, with the fraudulent intent charged, the verdict of forfeiture is an unavoidable result. The law is clear either that there must be a forfeiture of the books, or a recovery of the value of the property infected by the fraud. The government proceeds in this case for the forfeiture, and your verdict must respond to that claim.

There has been a very protracted investigation in respect to the value of these books, and their importation. It seems they were purchased in London and Edinburgh by the claimant Shaw, and have been traced to Montreal, where they were landed early in October, 1868. The invoices for the purpose of entry at the custom-house at Port Huron were made at Montreal. It is proved that the invoices embraced 204 cases of books, and were made out in triplicates, as required by our law. Were the prices fixed in the invoices below their true value? These invoices were submitted to and verified before the vice-consul of the United States at Montreal. In fixing their value, the market prices at Montreal should have been the

rule of value; and in order to determine their value here, the cost of transportation from Montreal to Cincinnati should be added.

As to the market value of the 78 cases sent to Cincinnati, the testimony is very clear and explicit. Two witnesses, Hill and Rickey, both booksellers in this city, acted as appraisers of the books, and examined them critically, with a view to an appraisement to be returned under oath. Clarke, also a bookseller, and of long experience in the business, inspected the books, with a view to their market value. These intelligent and perfectly reliable witnesses unite in saying the books were invoiced greatly below their value. If the jury give credit to this testimony, their only inquiry will be, was Shaw, who made the invoices, aware of this undervaluation, and was it with an intent to defraud the government of the legal tax? This inquiry is submitted to the jury, to be answered in the light of all the facts in evidence in the case.

,It has been often held by courts and judges, that fraud is partly a question of fact and partly a question of law. It is the province and duty of a jury to decide what facts are proved, sustaining the allegations of fraud, and for the court to determine whether such facts are sufficient in law to constitute a fraud. The fact of fraud is not to be presumed without evidence sustaining the charge. In this case the jury must be reasonably satisfied that Shaw was actuated by a fraudulent purpose in valuing these books, and in their entry at the custom-house, but if they are convinced the invoice rates were greatly below the true value of the books, the fraudulent intent might well be presumed. And I may remark in closing, that this not being, in a legal sense, a criminal case, it is not required that the evidence should be such as to exclude all doubt, and the jury may properly decide according to the preponderance of the evidence.

The jury returned as their verdict that the books were forfeited to the United States.